Helen Mick, Plaintiff-Appellee, and Jack Mick, Plaintiff, v. The Kroger Company, a Foreign Corporation, Defendant-Appellant.

Gen. No. 65–65.

Fifth District.

July 12, 1966.

Rehearing denied August 3, 1966.

Hill & Hill, of Benton, for appellant.

Benedict W. Eovaldi, of Benton, for appellee.

MORAN, J.

This is an appeal from the Circuit Court of Franklin County, Illinois, from a jury verdict for one of two plaintiffs in a negligence action.

The original action, based upon the alleged negligence of the defendant-appellant, was brought by the appellee, Mrs. Helen Mick, to recover damages for personal in-

juries received by her while a customer and business invitee on defendant's premises, and by her husband for moneys spent and for loss of services and consortium. The complaint set forth the "custom, usage, and habit with reference to the customers of the defendant's store for many years, and a violation of its duty to exercise reasonable care for the safety of the plaintiff while upon its premises," alleging that:

> The plaintiff had traded for years at said place of business of defendant, during all of which time defendant, without being requested to do so, furnished one or more of its employees to help its customers, including plaintiff and her husband, Jack Mick, to carry their groceries and meats and other commodities from the store proper to defendant's said parking lot immediately East of the store building, and to other places on East Main Street, in said City, where its customers had parked their cars,

and that the defendant was negligent in that it had "failed to assist plaintiff in carrying out of said store the groceries, meats and commodities which she had purchased therein."

For several years, the appellee had shopped at the defendant's self-service grocery store in Benton, Illinois. During that time, the store had provided a carry-out service for its customers. On September 3, 1963, after finishing her shopping, she pushed her cart into the check-out aisle. Her purchases were tabulated, the amount due collected, and the groceries placed in a large bag. The cashier then told her that she would have to manage by herself because there was no one else in the store and that he could not leave the cash register. She then said that she didn't know if she could manage it, but that she would try.

Mrs. Mick then picked up the bag containing about thirty pounds of assorted groceries and carried it out to

158

the sidewalk, when she discovered that her husband had left to pick up one of their children at a nearby high school. She rested the bag of groceries on the fender of a nearby car until she saw her husband drive into the lot. Mrs. Mick then picked up the bag again and stepped from the sidewalk to the parking lot pavement, whereupon she turned her ankle and began stumbling forward until the weight of the bag pulled her down. She suffered a broken foot and resulting permanent injuries.

The jury returned a verdict for Mrs. Mick in the sum of $4,000 and against her husband. The jury also answered a special interrogatory finding that Mrs. Mick was not guilty of contributory negligence at the time and place of the occurrence in question. Judgments were entered on the verdicts, from which only the defendant appeals. The trial court refused to strike all the allegations of negligence and overruled the defendant's motions for a directed verdict, in arrest of judgment, for judgment notwithstanding the verdict, and for a new trial.

On appeal, the Kroger Company first contends that the plaintiff failed to offer sufficient evidence to allow a jury to find it guilty of any negligence which proximately or contributorily caused the plaintiff's injuries and seeks a reversal.

Negligent conduct consists in the failure to exercise the care that a reasonable man of ordinary prudence would exercise in order to guard against any reasonably foreseeable, unreasonable risks of harm which flow or might flow from his conduct. The essential element of negligence is the exposure of another person to an unreasonable risk of harm. Wintersteen v. National Cooperage & Woodenware Co., 361 Ill 95, 197 NE 578; Kahn v. James Burton Co., 5 Ill2d 614, 126 NE2d 836; Harper and James, The Law of Torts, § 16.9 (1956).

In fact, the very concept of due care contains within it the implication of due care under certain circumstances, one of which is the presence of a reasonably foreseeable,

unreasonable risk of harm. Once it has been established that a duty to exercise due care exists, the question what constitutes due care under particular circumstances remains and must be determined by an analysis of all the facts. Thus, the determination of due care is essentially factual.

██ Generally, questions of due care, including the question of unreasonable risk, are for the jury to determine. Once a determination is made, a verdict will be set aside only if the verdict is against the manifest weight of the evidence or if reasonable minds would not differ as to the presence of due care under the circumstances. The mere fact that a jury could have reached a different conclusion or that a judge disagrees with the verdict does not suffice. Lindroth v. Walgreen Co., 407 Ill 121, 94 NE2d 847; Kahn v. James Burton Co., supra; Robinson v. Workman, 9 Ill2d 420, 137 NE2d 804; Levanti v. Dorris, 343 Ill App 355, 99 NE2d 398; Wallace v. Radovick, 55 Ill App2d 264, 204 NE2d 835; These principles are well emphasized in Ney v. Yellow Cab Co., 2 Ill2d 74, 117 NE 2d 74, at 84:

> Questions of negligence, due care and proximate cause are ordinarily questions of fact for a jury to decide. The right of trial by jury is recognized in the Magna Charta, our Declaration of Independence and both our state and Federal constitutions. It is a fundamental right in our democratic judicial system. Questions which are composed of such qualities sufficient to cause reasonable men to arrive at different results should never be determined as matters of law. The debatable quality of issues such as negligence and proximate cause, the fact that fair-minded men might reach different conclusions, emphasize the appropriateness and necessity of leaving such questions to a fact finding body. The jury is the tribunal under our legal system to decide that type of issue. To withdraw such questions

160

from the jury is to usurp its function. Bailey v. Central Vt. Ry. Co., 319 US 350.

In support of its first contention, the defendant alleges that the allegations of negligence in the complaint are "at most allegations of a deviation from a customary practice of this particular store . . ." and that "proof of a deviation from customary practice is not negligence and cannot in itself sustain a recovery." However, a deviation from customary practice is sufficient to furnish an evidentiary basis for a finding of negligence by a jury whenever there is some evidence in the record from which a jury could infer that the deviation may have resulted in an unreasonable risk of harm to the plaintiff. Turner v. Chicago Housing Authority, 11 Ill App2d 160, 136 NE2d 543.

There was evidence that the bag of groceries which Mrs. Mick carried from the store was twelve inches in width and eighteen inches in height, that it was "big" and "heavy," and that the top of the bag reached her chin when she carried it. Mrs. Mick testified that the bag "was too heavy for me to carry," that she told the check-out boy that "I don't know if I can manage it," that she normally did not carry "heavy ones like that," but that the store personnel carried them, and that she fell because "the bag weighted me down." In addition, there was evidence that the store personnel would normally help customers when there were large packages similar in size to the one which Mrs. Mick carried from the store. Her testimony was corroborated by the store manager, who testified in part as follows:

In my seventeen years with Kroger, it would be common practice to offer to help carry out groceries if they had a bag of considerable size.

Limiting it to the Benton store, it is the practice if the bag is cumbersome enough that they need assistance, they are instructed to get some help.

161

The normal practice was that they were instructed to do that without any request from the customer.

I would say a bag which contained four half-gallons of milk, five grapefruits and a large round steak weighing five or six pounds would be a large parcel. If I saw a woman with a bag that size I would have insisted on one of my employees helping her out of the store.

If one of my employees had gone out with a parcel like the one this plaintiff had here and there had not been a car there, he would either bring the groceries back into the store and put them in a cart or he would have went out with the cart and put the groceries in it, so that the customer would not have been loaded down with large parcels.

██ The evidence concerning custom, as the plaintiff's brief so well indicates, is competent in that the customs of a business constitute a part of the circumstances which are to be taken into consideration by a jury in determining due care.

█ In a series of cases, our courts have held that evidence tending to show a general custom and usual manner of conducting a business is competent, and the degree of care required of the defendant should be determined in view of the general practice of those rightfully upon the premises.

In Yeates v. Illinois Cent. R. Co., 145 Ill App 11, the appellate court sustained a verdict for $22,500 in favor of the plaintiff, stating at

syl. 1—Customs—how proof of may be made. The usual manner of conducting a business at the place of an accident established by rule or rules duly promulgated by persons in authority or growing out of the practice of employees long-continued, is competent to be shown as shedding light on the acts

and conduct of the parties and has a bearing on the question of negligence.

On appeal, the Supreme Court affirmed, Yeates v. Illinois Cent. R. Co., 241 Ill 205, 89 NE 338, saying at 210:

> The evidence was that there was a uniform custom on the part of the switch tender to hold out engines going north and not let them go upon the track until the road engine had come out; but it is insisted that the custom was not binding on the defendant because it was not the result of any rule promulgated by it, and when the switch crew saw the train on track No. 5 they were bound to anticipate a probable meeting with the road engine. It is the duty of a master conducting a business with different branches, to make, publish and enforce reasonable rules and regulations to promote the safety of servants (at 211) and no rule was ever made or published by the defendant governing the movement of trains at this switch. There was no rule of the defendant on the subject, but in considering the question whether the act of the switch tender was negligent and whether the switch crew ought to have anticipated meeting the road engine it was proper to consider the existence of the custom. (Cases cited.) The violation of a practically uniform custom tended to prove negligence on the part of the switch tender, by which the switch crew was misled and in consequence of which they encountered the danger which they had no reason to expect.

Harper and James, The Law of Torts, § 17.3 (1956) states that "custom is generally admissible as bearing on what is proper conduct under the circumstances. . . ." In addition,

Custom represents the judgment and experience and conduct of many and therein rests its probative force. . . . (One author states that) evidence of custom may have great bearing on the reasonable feasibility of a precaution. . . . Wigmore finds its probative value in its bearing directly on what is reasonable average conduct—it reflects the reaction of many to a similar situation and so has a tendency to show a composite judgment as to the risks of the situation and the precautions required to meet it.

■ ■ The Kroger Company owed to Mrs. Mick, an invitee on its premises, the duty to exercise reasonable care under the circumstances. Pauckner v. Wakem, 231 Ill 276, 83 NE 202; Olinger v. Great Atlantic & Pacific Tea Co., 21 Ill2d 469, 173 NE2d 443. From the evidence taken as a whole, a jury could and did find that the failure to provide a carry-out service for Mrs. Mick constituted an unreasonable risk of harm and a breach of its duty to exercise reasonable care for her protection as a customer. In this day and age, shoppers generally frequent the modern, self-service supermarkets, where they are furnished with a large cart which they wheel through the store and in which they place large amounts of groceries. It is not unreasonable for a jury to find that, under some circumstances, it would be the duty of a store to furnish assistance to its customers in carrying out their groceries, especially where it has been the custom and practice to do so. Indeed, courtesy, politeness, and proper consideration for a customer's needs are inducements for a customer's trading in a particular store.

■ ■ This is not to say that the Kroger Company should insure the safety of its customers, Olinger v. Great Atlantic & Pacific Tea Co., supra, but only that,

164

from all the evidence presented in this case, a jury could find that there was an unreasonable risk of harm and a failure to provide reasonable protection against the harm. A jury also could and did find that the negligence of the Kroger Company was the proximate cause of Mrs. Mick's injuries. All of these questions are essentially factual and within the proper scope of a jury. Their findings should be disregarded only if "the verdict of the jury is manifestly and palpably against the weight of the evidence. . . ." Wallace v. Radovick, supra. Here, sufficient evidence was presented.

 The appellant also contends that there was no proof of freedom from contributory negligence and that, therefore, Mrs. Mick was guilty of contributory negligence as a matter of law. However, as emphasized in Simaitis v. Thrash, 25 Ill App2d 340, 166 NE2d 306, at 350:

> The question of contributory negligence ordinarily and preeminently presents a question of fact. It can become a question of law only when from the undisputed facts, all reasonable minds, in the exercise of fair and honest judgment, would be compelled to reach the conclusion that there was contributory negligence. Lasko v. Meier, 394 Ill 71, 67 NE2d 162.

 The facts in this case are not so clear that all reasonable minds would be compelled to reach the conclusion that there was contributory negligence. There was evidence which made the question of contributory negligence one for a jury determination. One of the factors which the jury considered was the availability of a cart for Mrs. Mick's use. However, as indicated clearly by the special interrogatory, the jury found that, even though she did not make use of an available cart, she was not guilty of contributory negligence. And,

from what has been said earlier, a jury determination should not be set aside unless it is palpably erroneous. Wallace v. Radovick, supra.

 ██ The defendant also contends that evidence concerning its offer to pay the plaintiff's hospital bills should not have been admitted. A similar contention was overruled in Hanlon v. Lindberg, 319 Ill App 1, 48 NE2d 735, wherein the court held at 7:

> Where the parties are strangers under the law, and the one charged with being the wrongdoer *promises to pay* or does pay for hospital and medical care, it is a proper circumstance for the consideration of the jury. Sullivan v. Heyer, 300 Ill App 599, 601, 21 NE2d 776.

This case still represents the law in Illinois. Then too, the defendant fails to point out that this testimony was elicited, first, in an extended cross-examination of Mr. Mick by the defendant, and, second, in answer to specific questions by the defendant's counsel, asked twice, both as to the offer of payment and as to the signing of a release. The following questions and answers constitute a part of this cross-examination:

> Q. Were you at home, Mr. Mick, on the day the representative of Kroger Company talked to your wife about the doctor bills and about signing a release?
>
> A. He was there one time when I was home, but I was busy working outside, I never, I wasn't there when—
>
> Q. Isn't it a fact, Mr. Mick, the Kroger Company offered to pay this Doctor's bill, but you and your wife would not sign a release for payment of that, payment against the Kroger Company?
>
> A. That is right, we wouldn't sign no release.

■■ ■■ The defendant also contends that the court erred in giving the plaintiff's Instruction No. 6 (IPI 21.01) and in refusing the defendant's Instructions Nos. 3 and 4. As indicated by the plaintiff's brief, it was only after the defendant insisted upon its Instruction No. 5 (IPI 21.02) that it became necessary for the plaintiff's Instruction No. 6 to be given; for it is suggested in IPI that 21.01 be given whenever 21.02 is given. In fact, plaintiff offered to withdraw plaintiff's Instruction No. 6 if defendant would withdraw defendant's Instruction No. 5. Defendant's Instructions Nos. 3 and 4 were properly refused because they were argumentative and did not apply to the facts in this case. In addition, they were non-IPI Instructions, the subject matter of which was amply covered by IPI Instructions Nos. 120.05, 120.06 and 120.07.

For the foregoing reasons the judgment of the trial court is affirmed.

Judgment affirmed.

GOLDENHERSH and EBERSPACHER, JJ., concur.