**Shirley Beccue, Plaintiff-Appellant, v. Rockford Park District, a Municipal Corporation, Defendant-Appellee.**

Gen. No. 67–125.

Second District.

April 16, 1968.

Lawrence J. Ferolie, of Rockford, for appellant.

Maynard, Maynard and Brassfield, of Rockford, for appellee.

MR. JUSTICE DAVIS delivered the opinion of the court.

The plaintiff, Shirley Beccue, brought this action against the defendant, Rockford Park District, for personal injuries suffered while tobogganing at a park owned by the defendant. In her complaint, she charged the defendant with negligence in Count I, and with wilful and wanton conduct in Count II.

The jury answered separate special verdicts, finding that the plaintiff was free from any negligence or wilful or wanton conduct proximately contributing to her injuries, and also, that the defendant was free from any negligence or wilful and wanton misconduct as charged against it. The jury rendered a general verdict for the defendant on which judgment was entered, and the plaintiff has appealed to this court.

The plaintiff here contends: that the defendant was negligent as a matter of law; that the answers to certain special interrogatories and the verdict are contrary to the manifest weight of the evidence; that certain admissions

made by the defendant in its pleading were improperly excluded from the evidence, as were admissions by an employee of the defendant; that specific photographs offered in evidence by the plaintiff were also improperly excluded; that the trial court erred in instructing the jury; and that the form of verdict submitted by the court was improper.

At the time of the occurrence—December 5, 1964— the plaintiff, then twenty-one years of age, was a student at Northern Illinois University. She, along with approximately thirty students from the university, located at DeKalb, arrived at Atwood Park in Rockford, at approximately 1:00 p. m.—shortly after a moderate snowfall— for the purpose of tobogganing. They had two toboggans.

Some of the group commenced to toboggan down a run or a hill. Others, including the plaintiff, first had lunch. Apparently no one, other than this group, was using this hill at the time. After lunch, the plaintiff, along with some others, went to join the group of fifteen to twenty persons who were then tobogganing. The plaintiff's first run on the toboggan was at about 2:30 p. m.; it was uneventful. After her first run, the plaintiff took her turn in line to go back up the hill. The line passed the toboggans up from the bottom to the top of the hill. As persons got on the toboggan, the rest of the line then moved part way up the hill. Under this procedure, it took approximately thirty minutes to get back up to the top of the hill.

When the plaintiff reached the top of the hill, at approximately 3:00 p. m., she, and three boys, got on the toboggan for her second ride. She was the second person from the front. When the toboggan had proceeded approximately one-third of the way down the hill, the two boys behind and the one in front of the plaintiff, fell off it and the toboggan continued down the hill with only the plaintiff on it. It then veered to the right and

struck a tree. The plaintiff, as a result, suffered very severe injuries.

At the time the boys fell off the toboggan, it apparently was going straight down the run and had not struck any bump, hole or depression. No explanation or reason was given for their fall. The members of this group had been tobogganing continually from the time they arrived at the park. There had been no incidents or accidents prior to the unfortunate one in question.

The park was open to the public on this date, as was the area in question, and apparently there were no signs either prohibiting tobogganing in the area or advising of any danger in connection therewith. A park district maintenance man was plowing snow off the roadways in the area: he did not say anything to any of the group.

The particular area or run used by the group had previously been a toboggan slide. The defendant had constructed a wooden toboggan slide at this point in the fall of 1961. The site was selected because of the pitch of the hill. The hill was wooded and the defendant cleared and leveled a straight run thereon, approximately 10 to 12 feet in width for the slide. The wooden slide was about 225 feet in length and there was a roadway approximately 175 feet from the bottom of the slide. This had to be leveled to permit the toboggans to pass safely over it. A river was about 450 feet from the bottom of the slide. And, at the bottom of the hill a curve was built up to turn the toboggans to the right and to prevent them from going into the river.

The wooden slide was removed by the defendant in September of 1964. Several reasons were given: it was difficult to keep snow on it because of its southern exposure; it was too expensive to man with sufficient help; the majority of users were from out of the park district; and it was unsafe in that the curve at the bottom was too abrupt. Also, there was apparently some danger of toboggans going over the banked curve and into the river.

186

The testimony, as well as the pleadings of the defendant, established that there had been a sign, or signs, stating, "Toboggan Slide Closed," "Danger—No Sliding." These signs were placed in the area after the wooden slide was closed to the public, but before it was dismantled. The signs remained after the wooden slide was removed, but it is undisputed that no such signs were at the area on the date in question, and no employee of the defendant warned, advised against, or prohibited the tobogganing. The evidence established that at least the maintenance employee who was plowing snow from the road saw the group tobogganing at the area in question and made no protest.

The plaintiff testified that she had tobogganed at Atwood Park the previous year. She did not then use the wooden slide but tobogganed where there was a path through another tree-covered area. She did not know that there had been a wooden toboggan slide at the site.

The plaintiff first argues that the defendant was guilty of negligence as a matter of law in permitting the path cut through the trees to remain in such condition—after the slide was removed—that it could be used for tobogganing; in not having the area posted on the date in question with signs warning of the danger or prohibiting the use of the hill; and in the failure of the defendant's employees to warn her of the danger or prohibit her from using the hill.

 In maintaining its recreational facilities for use by the public, the body politic in the aggregate benefits from its use as does the individual user. There is a common or mutual benefit derived from the use of public recreational facilities which justifies the creation, maintenance and expenditure of public funds for such facilities. It is this common benefit which results in the individual user being an invitee to whom there is owed by the public entity the duty customarily owed to invitees, at

least so long as the latter does not go beyond the bounds of his invitation. DuMond v. City of Mattoon, 60 Ill App 2d 83, 86, 87, 207 NE2d 320 (1965).

The plaintiff clearly was an invitee at the time of her injury. The gate to the particular area was open, inviting the use of this area by the public, including the plaintiff. Even though signs may have been posted at another time, there were then no signs prohibiting the use of this area for tobogganing; there was no protest by the defendant's employee who saw the area used for tobogganing, and for all intents and purposes, the area was open for, and invited the use for, tobogganing.

▪ As an invitee, the defendant owed the plaintiff the duty of exercising reasonable care for her safety. Driscoll v. Rasmussen Corp., 35 Ill2d 74, 77, 219 NE2d 483 (1966); Geraghty v. Burr Oak Lanes, Inc., 5 Ill2d 153, 157, 125 NE2d 47 (1955). If there are hidden dangers upon the premises, the owner must use ordinary care to give warning thereof. Geraghty v. Burr Oak Lanes, Inc., supra, 158. An owner or occupier of premises, because of the superior knowledge he is expected to have relative thereto, is held to a higher standard of knowledge, presumed or actual, of defects in the premises than is an invitee. Thus, the duty to remedy or warn an invitee of defects in the premises extends not only to known defects, but also to those of which the owner could have known had he used reasonable care. Blue v. St. Clair Country Club, 7 Ill2d 359, 363, 131 NE2d 31 (1956); Bogovich v. Schermer, 16 Ill App2d 197, 200, 147 NE2d 711 (1958).

▪ Apart from the obvious dangers, the plaintiff, as an invitee, could assume that the premises were reasonably safe for the use to which the defendant had put them. Geraghty v. Burr Oak Lanes, Inc., supra, 158.

▪ The limits of the duty owed by one inviting another on his premises is well-defined in Altepeter v.

Virgil State Bank, 345 Ill App 585, 104 NE2d 334 (1952), at page 598:

> "An owner of property is not an insurer against accident occurring on the premises of the owner, and an owner's liability to an invitee for injuries not intentionally inflicted must be predicated upon negligence, and no presumption of negligence on the part of the owner arises merely by showing that an injury has been sustained by one rightfully upon the premises. (Citation.) The rule is that an occupant or owner of premises owes to an invitee a duty to use ordinary care to have the premises in a reasonably safe condition for use in a manner consistent with the purpose of the invitation, not to lead such person into a dangerous trap and to give such person adequate and timely notice and warning of latent or concealed perils which are known to the owner but not to the invitee."

An invitee using the premises for his benefit and that of the owner, must be held to be equally aware of all the obvious and normal hazards which accompany the use being made of the premises. The owner's liability is bottomed on his superior knowledge, presumed or otherwise, of defects in the premises which another is invited to use.

We do not believe that the plaintiff assumed all the risks incident to tobogganing, or that the defendant was an insurer against injury. We do believe that the duty which it owed to the plaintiff-invitee was to exercise the care of a reasonable man to keep the premises reasonably safe for the intended use, and to give her adequate warning of those dangers which were not readily apparent.

The duty imposed upon the owner of land with reference to an invitee is consistent with conduct

189

normally described as negligent. Such conduct is a failure to exercise the care that a reasonable man of ordinary prudence would exercise to guard against any reasonably foreseeable, unreasonable risks of harm which might flow from his conduct. The essential element of the negligence is the exposure of another to an unreasonable risk of harm. Mick v. The Kroger Co., 73 Ill App 2d 155, 159, 160, 218 NE2d 654 (1966). Therein lies the distinction between an insurer—responsible for all enumerated risks—, and a negligent person—responsible only for those risks unreasonably imposed upon another.

 Whether the risks, imposed upon the plaintiff by the defendant in allowing the run to remain in such condition that it could be used for tobogganing and in permitting it to be used without any warning signs, were unreasonable risks under the circumstances, and whether the defendant breached its duty to the plaintiff as invitee, were essentially factual determinations for the jury. Garrett v. National Tea Co., 12 Ill2d 567, 573, 147 NE2d 367 (1958); Mick v. The Kroger Co., supra, 160; Cooley v. Makse, 46 Ill App2d 25, 32, 196 NE2d 396 (1964). For liability to be imposed, the injury must be the natural and probable result of a negligent act or condition and be of such character that an ordinarily prudent person ought to have foreseen as likely to occur. Driscoll v. Rasmussen Corp., supra, 78.

The jury might well have found that permitting a straight run, some 10 to 12 feet in width, to be used for tobogganing, was not negligence. It might well have felt that the existence of such a run could provide a safer place for tobogganing than an uncleared hillside interspersed with trees, which hillside might have been found, and used, elsewhere in the park. The jury might also have inferred that the signs at one time found on the run were primarily to prevent the use—for any purpose—of the wooden slide prior to its being dismantled; and that the purpose of the signs was to protect against

or prevent persons from going into the river at the bottom of the slide. It could have found that notwithstanding the fears expressed by the defendant relative to the curve by the river, there was in fact no danger from the river as evidenced by the one and one-half hours of tobogganing without any apparent mishap in this respect. In view of the expressed concern of the defendant, perhaps the jury would have reached a different conclusion had one of the group been injured by a toboggan going into the river.

 There could be endless speculation as to what the jury might, or could, have determined. However, we cannot conclude that all of the evidence is such, that when viewed in its aspect most favorable to the defendant, so overwhelmingly favors the plaintiff that no contrary verdict based thereon could ever stand. Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 510, 229 NE2d 504 (1967). Accordingly, it was not error for the trial court to refuse to grant the plaintiff's motions for directed verdict and for judgment notwithstanding the verdict.

Likewise, we cannot say that the special findings or verdict was contrary to the manifest weight of the evidence. There is, really, little or no dispute in the facts presented in this case. There are a number of inferences and conclusions which the jury might reasonably have drawn from these facts, including those reached by it in its special findings and verdict.

The original complaint, in essence, charged, in paragraphs 5, 6 and 11, that the defendant negligently constructed and maintained a toboggan slide and invited the public to use it. The defendant's answer admitted the construction of a toboggan slide but denied that the public on the date in question was invited to use it—the slide having been dismantled—and stated "that by appropriate signs at said site, the members of the public, including the plaintiff, were expressly prohibited from

191

using said toboggan slide for sledding or tobogganing . . . ." The answer further stated that the natural slope where the slide structure originally had been erected "was closed to the public for sledding or tobogganing purposes, and that appropriate large wooden signs had been placed at the top of said slope stating, 'Danger—No Sliding.' "

The plaintiff contends that the refusal of the trial court to admit this answer into evidence, as an admission, was error. Where admissions are made in a pleading to settle the issues, which is not amended or withdrawn, as in the case at bar, they constitute judicial admissions for the purposes of that action. Their effect is that they are conclusive as to the matters admitted, whereas evidentiary admissions need not be conclusive upon the party making them. Coss v. Magdziasz, 65 Ill App2d 40, 42, 212 NE2d 717 (1965); Precision Extrusions, Inc. v. Stewart, 36 Ill App2d 30, 50, 51, 183 NE 2d 547 (1962); Cleary, Handbook of Illinois Evidence, 2d ed, §§ 5.1, 17.12. Whether such judicial admissions should be formally offered as evidence in the case in which they are a part of the record, or whether they are to be commented on without formal offer, depends on local procedure. See: Gard, Illinois Evidence Manual (1963), Rule 199, Comments.

During the course of the testimony, the park director was asked by counsel for the plaintiff whether any signs were posted stating that the area was closed for tobogganing. He testified that such a sign was placed on the site prior to the time the slide was dismantled, but he could not say whether it was there on the date in question, but he thought it was not. Counsel then asked him whether on this date the toboggan site was a prohibited area, to which he answered "No," and stated that the plaintiff was not prohibited from using the slide area. Counsel for the plaintiff then read the paragraphs from the answer above referred to—which stated that the site

192

was closed to the public and the area prohibited and posted against tobogganing. The witness admitted that the answer contained those statements, and the court subsequently permitted the answer to be used for impeachment purposes but denied its admission into evidence.

Certainly, the plaintiff does not suggest that the answer should be taken as establishing that there were signs posted and present prohibiting the plaintiff from using the area for tobogganing. Such would hardly be an admission. If this fact were true, it would serve to remove the plaintiff from the protection otherwise afforded her as an invitee. DuMond v. City of Mattoon, supra, 87. If the defendant could have substantiated these allegations, it would have raised a formidable defense, in contrast to an admission.

There is no dispute that the defendant considered the area fraught with some danger. The peril which concerned the defendant was the presence of the river, and this was one of the reasons for dismantling the slide. However, there is no dispute that the area was open to the public on the day in question without signs of any type being posted.

██ ██ Whether this was negligence on the part of the defendant was for the jury to weigh and determine, along with all the other circumstances before it, in arriving at its verdict. In the light of these facts, we do not believe that the plaintiff was prejudiced by the refusal of the trial court to admit the answer into evidence.

The plaintiff also offered to prove, through the testimony of a newspaper reporter, that a park district police officer had said to him, after the incident, that the run had been closed because the trees bordering the run posed a danger. The plaintiff contends that the testimony of the newspaper reporter should have been admitted to show the notice to the defendant, through its agent—the police officer—of the dangerous condition.

■ The cases cited by the plaintiff are appropriate authority for the proposition that an agent's knowledge, as to matters and when acting within the scope of his agency and authority, may be imputed to his principal. In this case, however, there is nothing to suggest that it was within the scope of the agency and authority of the park district police officer to close toboggan runs or to assign reasons therefor.

It is difficult to comprehend how the statement of the police officer could be admitted into evidence on the theory that it imputed notice to the defendant that the run had been closed because of the trees. If there were such information, it would have come from the principal—the defendant; and it would then have been unnecessary to impute such knowledge. If the plaintiff had called the park district police officer, then perhaps it could have been determined if the statements made by him were mere assumptions, perhaps after the fact, or possible things told to him by others unknown.

■ ■ However, the police officer was not called. The danger in permitting the reporter to testify to such a vague and questionable statement made to him after the fact, is obvious. If this were an admission, as contended by the plaintiff, the reporter could not testify concerning it since it is not an exception to the hearsay rule. A narration or statement by an agent after an event has passed, and in regard to such event, does not bind the principal and cannot be proved as an admission. Baier v. Selke, 211 Ill 512, 518, 71 NE 1074 (1904); Hudson v. Augustine's, Inc., 72 Ill App2d 225, 236, 218 NE2d 510 (1966); Fortney v. Hotel Rancroft, Inc., 5 Ill App2d 327, 333, 125 NE2d 544 (1955).

■ The plaintiff also contends that the court erred in excluding photographs of the wooden slide originally on the run. There were numerous photographs in evidence accurately depicting the entire hill as it appeared on the

date in question. We are of the opinion that the trial court correctly exercised its discretion in denying admission into evidence of the photographs of the wooden slide as it was when still on the hill. Brackett v. Osborne, 44 Ill App2d 441, 458, 195 NE2d 8 (1963).

 The plaintiff has charged that the court erred with reference to three instructions: She complains that an instruction was refused when in fact it was given. The other alleged error is with reference to a revised version of instruction IPL No. 12.04. Both the plaintiff and the defendant submitted a revision of such instruction. The court refused that submitted by the plaintiff and gave the revision tendered by the defendant. The first paragraph of such instruction tendered by both the plaintiff and the defendant was substantially the same. However, the defendant added a further paragraph to its instruction. The plaintiff contends that the last paragraph of the instruction should not have been given. It states:

> "However, if you decide that the sole proximate cause of injury to the plaintiff was the conduct of some person other than the defendant, then your verdict should be for the defendant."

The plaintiff argues that there was no issue or evidence as to the conduct of any person other than the defendant with reference to the cause of the plaintiff's injury. The defendant, however, sought to establish and argued, that in the absence of any defects on the run causing the toboggan to veer, the fact that the three boys—two behind and one in front of the plaintiff—simultaneously fell from it, whether because of horseplay or otherwise, at a time when the toboggan was otherwise going straight down the run, was the sole proximate cause of the injury. Whether the jury could or would adopt such inference from the evidence, there was suffi-

195

cient basis for such a theory and the defendant was entitled to have the jury instructed thereon. Hack v. New York, C. & St. L. R. Co., 27 Ill App2d 206, 225, 169 NE2d 372 (1960).

 The trial court gave a single verdict form to the jury, asking it either to find the defendant guilty or not guilty. The plaintiff contends that this was error in that the principles of law involved in Count I—relating to negligence—and in Count II—to wilful and wanton conduct—are different, and that the jury should have been given separate forms of verdicts as to each count. The defendant points out that the plaintiff neither objected to the form of verdict when given by the court nor claimed such circumstance as error in the post-trial motion, and, consequently, that the point may not now be raised for the first time on appeal. Nelson v. Union Wire Rope Corp., 31 Ill2d 69, 114, 199 NE2d 769 (1964); Marks v. Newburger, 69 Ill App2d 220, 224, 216 NE2d 250 (1966); Vierke v. Sunset Valley Creamery Co., 58 Ill App2d 323, 330, 208 NE2d 305 (1965).

 We might add that while the plaintiff's contention as a general proposition is correct (Palsir v. McCorkle, 70 Ill App2d 425, 429, 430, 216 NE2d 682 (1966); Eggimann v. Wise, 41 Ill App2d 471, 485, 191 NE2d 425 (1963)), there was no possibility that the jury was confused by the verdict form in the present case— the danger concerning the court in Palsir and Eggimann. The jury was given special interrogatories which effectively covered the separate issues raised by each count. The answers to the interrogatories would have clearly demonstrated on which count or counts the jury found the defendant guilty, had it done so. The answers were consistent with the general verdict of not guilty rendered by the jury. We do not believe that the manner in which the case was submitted either tended to confuse the jury or prejudice the plaintiff.

For the reasons stated herein, the judgment of the trial court is affirmed.

Judgment affirmed.

ABRAHAMSON, P. J. and MORAN, J., concur.