BEN GENAUST, Plaintiff-Appellant, *v.* ILLINOIS POWER COMPANY *et al.*, Defendants-Appellees.

(No. 73-83; )

Fifth District—November 6, 1974.

John E. Norton, Professional Corporation, of Belleville (Edward J. Kionka, of counsel), for appellant.

Carl W. Lee, of Roberts, Gundlach & Lee, of Belleville, for appellee Illinois Power Company.

Gordon R. Broom, of Burroughs, Simpson & Wilson, of Edwardsville, for appellee Hy-Gain Electronics Corporation.

Allen D. Churchill, of Dunham, Boman, Leskera & Churchill, of East St. Louis, for appellee Lurtz Electric Company, Inc.

John F. O'Connell, of O'Connell & Waller, of Belleville, for appellee Rohn Tower Manufacturing Company.

William B. Wham, of Wham and Wham, of Centralia, for appellee Hubert Plumbing and Heating Company, Inc.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by plaintiff, Ben Genaust, from the dismissal by the circuit court of St. Clair County of five counts (numbered II through VI) of his second amended complaint, in which plaintiff claimed injuries sustained when an electrical current arced from uninsulated power lines of defendant Illinois Power Company to a metal antenna manufactured by defendant Hy-Gain Electronics Corporation, sold to plaintiff by defendant Lurtz Electric Company, which plaintiff was installing on top of a metal tower manufactured by Rohn Tower Manuracturing Company and sold by defendant Lurtz Electric Company, on the premises of defendant Hubert Plumbing and Heating Co., Inc.

The first count (Count I) of said complaint charged defendant Illinois Power Company with negligence in the location, failure to insulate, and failure to warn of dangers from its wires. That count is not involved in this appeal.

The facts, as taken from the pleadings, are that the plaintiff prior to March 3, 1969, entered into an oral contract with defendant Hubert Plumbing and Heating Company in which he agreed to furnish and install an antenna on Hubert's premises in Belleville, Illinois.

To perform the contract, the plaintiff thereafter purchased a galvanized steel tower and antenna from defendant Lurtz Electric Company of Belleville. The tower was manufactured by defendant Rohn Tower Manufacturing Co. The antenna was manufactured by defendant Hy-Gain Electronics Corporation.

On March 3, 1969, while the plaintiff was installing the tower and antenna on Hubert's premises, the antenna came close to, but did not touch, certain uninsulated power wires of the defendant Illinois Power Co. The wires "passed close to the building on the premises of Hubert" where the antenna was being installed. An electric current arced from the power lines to the antenna, and the electric current struck the plaintiff, causing him serious injury.

The second count against Illinois Power Company is based upon strict liability in tort for unreasonably dangerous products. The plaintiff alleges that the product sold by this defendant, *i.e.*, electricity, was in an unreasonably dangerous condition in that the wires carrying the electricity were uninsulated and located so close to the ground and adjacent building as to create an unreasonable risk of harm. This count also alleged that said defendant failed to warn the public of the uninsulated condition of the wires and of the danger of electricity arcing from them.

The third count is against defendant Hy-Gain Electronics Corporation. The fourth count is against Rohn Tower Manufacturing Co. The fifth count is directed against the seller Lurtz Electric Company. These three counts are all based upon a strict liability in tort theory. The basis of these claims is that the seller (Lurtz )and the manufacturers (Hy-Gain and Rohn) delivered to the defendant the tower and antenna in an unreasonably dangerous condition in that they failed to have adequate warnings or labels on or accompanying the products or their packaging, informing the plaintiff and others of the dangers of using, installing, or bringing these products in close proximity to power lines, and that these products could cause an electric spark to be arced to them from a power wire if brought within a certain distance from such wire.

Count VI is directed against Hubert Plumbing and Heating Company. This is the party in possession of the premises on which the tower and

antenna were being installed at the time of the injury. The plaintiff alleges that Hubert knew or should have known that the Illinois Power Company wires passed in close proximity to the building and that the wires were not properly and sufficiently insulated. The plaintiff also alleges that Hubert was negligent in three instances; failing to warn, ordering the installation in such position as to be dangerously close to the power wires thereby creating an unreasonable risk of harm to the plaintiff, and failing to provide the plaintiff with a safe place to work.

In support of Count II plaintiff relies upon *Suvada v. White Motor Co.*, 32 Ill.2d 612, 210 N.E.2d 182, in which our Supreme Court approved the application of strict liability in tort as set forth in the Restatement of Torts (Second), section 402A, by stating:

> "We note that the views herein expressed coincide with the position taken in section 402A of the American Law Institute's revised Restatement of the Law of Torts approved in May 1964: The section provides:
>
> '(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> '(a) the seller is engaged in the business of selling such a product, and
>
> '(b) it is expected to reach the user or consumer in the condition in which it is sold.
>
> '(2) The rule stated in subsection (1) applies although
>
> '(a) the seller has exercised all possible care in the preparation and sale of his product, and
>
> '(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller'." 32 Ill.2d 612, 621, 210 N.E.2d 182, 187.

Although the Restatement's formulation, as adopted by our supreme court in *Suvada*, speaks in terms of liability of the "seller" of chattels to "users and consumers," it has since become apparent that the protection of the doctrine is not limited to users and consumers of the defective product. In fact, the framers of the Restatement, by way of a caveat appended to section 402A, made it clear that no opinion was expressed on whether the rules embodied in that section "* * * may not apply (1) to harm to persons other than users or consumers * .* *." Comment o to section 402A concedes that there may be no reason for denying the protection of the doctrine to nonusers and nonconsumers "* * * other than that they do not have the same reasons for expecting such protection as the consumer who buys * * *" the product, since the doc-

trine of strict liability resulted from the pressures of consumer advocacy. In recent years the protection afforded by the doctrine of strict liability in tort has been extended to persons other than users and consumers, most notably to bystanders, in Illinois (*Winnett v. Winnett*, 57 Ill.2d 7, 310 N.E.2d 1; *Mieher v. Brown*, 3 Ill.App.3d 802, 278 N.E.2d 869, *rev'd on other grounds*, 54 Ill.2d 539, 278 N.E.2d 869) and in other jurisdictions (*e.g., Jones v. Hutchinson Manufacturing, Inc.* (Ky. 1973), 502 S.W.2d 66; *Giberson v. Ford Motor Co.* (Mo. 1974), 504 S.W.2d 8; *Moss v. Polyco, Inc.* (Okla. 1974), 522 P.2d 622; *Elmore v. American Motors Corp.* (1969), 70 Cal.2d 578, 75 Cal. Rptr. 652, 451 P.2d 84; and *Howes v. Hansen* (1972), 56 Wis.2d 247, 201 N.W.2d 825; *Darryl v. Ford Motor Co.* (Tex. 1969), 440 S.W.2d 630).

Since *Suvada* there have been a great number of decisions which have dealt with various problems surrounding the applicability of strict liability in tort. None of these cases, however, have considered at what precise point in time such liability accrues. The vast majority of the cases involving strict liability in tort have concerned finished products which were sold, leased or in which possession was otherwise transferred at the normal termination of the manufacturer's marketing scheme. On the other hand, a few cases have considered injuries that have occurred prior to a "sale" or transfer of possession and still held the manufacturer accountable under the theory of strict liability in tort. (*E.g., Davis v. Gibson Products Co.* (Tex. Civ. App. 1973), 505 S.W.2d 682.) In each of those few cases the injury occurred while the product was in the process of being marketed through a retail outlet in which the product was intentionally made accessible to the public for inspection in hopes that such inspection would result in the sale of the product. Discounting those cases which have involved the transfer of possession or use of a product for promotional or testing purposes, no case can be found which has held a manufacturer liable in strict liability in tort for injuries which have occurred before a product has, at least, entered its final marketing or merchandising stage, nor has the plaintiff suggested that any such cases exist.

Nevertheless, plaintiff contends that the imposition of liability on the manufacturer of electricity to a person injured by electricity being transmitted by its high power lines is a logical extension of the doctrine of strict liability in tort. We cannot agree.

■■ The Supreme Court of Wisconsin when faced with a similar question in *Kemp v. Wisconsin Electric Power Co.* (1969), 44 Wis.2d 571, 583, 172 N.W.2d 161, 166, held that since the electricity in the high tension transmission wires had not been sold but was still in the control of the defendant, strict liability in tort had no application. While we do not consider the fact that there was no sale to be conclusive, we agree with

the result reached by the Supreme Court of Wisconsin. The special responsibility imposed by strict liability in tort does not accrue until the product is released "into the stream of commerce." The focal point is not the "sale" of the product in question but rather the point at which the manufacturer, distributor or retailer relinquishes his exclusive exercise of dominion over such product. In order to determine the point in time at which the product is released "into the stream of commerce" it becomes necessary to analyze the defendant's marketing scheme in light of the "intended use doctrine" and the foreseeability of harm.

Plaintiff's original complaint referred to the wires in question as "high power lines." Although the term "high power line" was not employed in plaintiff's first or second amended complaint, in his brief it is stated that, "The evidence in this case will show that the wires were carrying about 12,500 volts." And in plaintiff's reply brief he refers to "the great danger of high-voltage electricity."

■■ It is evident from these facts, derived from plaintiff's own averments, that the electricity which allegedly injured the plaintiff emanated from the "high power lines" of the defendant. We can, therefore, assume that the defendant's marketing or delivery scheme contemplated additional transformation of the product before delivery to its customers. To hold power companies strictly liable in tort while their "products" are being conveyed, in a non-marketable state, to their intended users or consumers or other foreseeable persons is to drastically depart from the doctrine of strict liability in tort as we know it. Unless we are expected to hold public utilities to a higher standard than other manufacturers, we would be required, under the strained version of the rule advocated herein, to hold each manufacturer, distributor and retailer strictly liable in tort for all injuries caused by the product even though said injuries occurred prior to any intended or foreseeable release of the product to the public.

■■ We believe that such a result is not only unwarranted but contrary to the supreme court's ruling in *Winnett v. Winnett*, 57 Ill.2d 7, 310 N.E.2d 1. Therein the supreme court stated:

"In our judgment the liability of a manufacturer properly encompasses only those individuals to whom injury from a defective product may reasonably be foreseen and *only those situations where the product is being used for the use for which it was intended or for which it is reasonably foreseeable that it may be used.* Any other approach to the problem results in making the manufacturer and those in the chain of product distribution virtual insurers of the product, a position rejected by this court in Suvada." (Emphasis added.) (57 Ill.2d 7, 11, 310 N.E.2d 1, 4.)

The court continued, by stating:

> "A foreseeability test, however, is not intended to bring within the scope of defendant's liability every injury that might possibly occur. "In a sense, in retrospect almost nothing is entirely unforeseeable.' * * * Foreseeability means that which it is *objectively reasonable* to expect, not merely what might conceivably occur." (57 Ill.2d 7, 12-13, 310 N.E.2d 1, 4-5.)

The court then went on to hold that the trial court properly dismissed the plaintiff's amended complaint since it was not "objectively reasonable to expect" nor reasonably foreseeable "that a four-year-old child will be permitted to approach an operating forage wagon or that the child will be permitted to place her fingers in or on the holes in its moving screen." 57 Ill.2d 7, 13, 310 N.E.2d 1, 5.

■■ Under the facts alleged herein we hold that the situation which gave rise to the instant cause of action was not within the "intended use" of the product in light of the obvious marketing scheme of the defendant nor was such situation reasonably foreseeable as that term has been defined by our supreme court in *Winnett*. Consequently, we conclude that the circuit court properly dismissed the plaintiff's Count II against the Illinois Power Company which is framed in allegations sounding in strict liability in tort.

Next we shall consider plaintiff's Counts III (Hy-Gain Electronics), IV (Rohn Tower Manufacturing), and V (Lurtz Electric Company), which contend that an antenna and tower, intended for installation high in the air, were unreasonably dangerous for failure to be equipped with warnings of the danger of installing them in close proximity to electrical transmission wires due to the possibility of "arcing," and are couched in terms of strict liability.

As stated by the plaintiff in his brief,

> " '* * * a cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved under the pleadings, which will entitle the plaintiff to recover.' *Louis v. Barenfanger*, 81 Ill.App.2d 104, 226 N.E.2d 85, 88 (5th Dist. 1966), aff'd. 39 Ill.2d 445, 236 N.E.2d 724 (1968), *cert. denied*, 393 U.S. 935."

The plaintiff also refers us to *Williams v. Brown Manufacturing Co.*, 93 Ill.App.2d 334, 360, 236 N.E.2d 125, 139, wherein this court stated:

> "Contrary to defendant's contentions, a duty to warn is no stranger to the law of Illinois. The general rule is well stated in Kirby v. General Paving Company, 86 Ill.App.2d 453, 229 N.E.2d 777, wherein at page 779, the court said. 'A duty to warn exists where

there is unequal knowledge, actual or constructive, and the defendant possessed of such knowledge, knows or should know that harm might or could occur if no warning is given. [Citations.] "\* \* \* A review of the authorities leaves little question that where a manufacturer *has reason* to foresee that danger may result from a particular use he *may be required* to give *adequate warning* of the danger. In the absence of *adequate warning,* liability may arise from use of an instrumentality not otherwise defective, since failure to warn may itself be the defect which causes injury." (Emphasis ours.)

The plaintiff cites the case of *Stilfield v. Iowa-Illinois Gas & Electric Co.,* 25 Ill.App.2d 478, 167 N.E.2d 295, in which the complaint was based on negligence, in particular (a) failing to give warning of high voltage, (b) failure to use high poles to carry electrical wires above a known working area, (3) failure to insulate wires in a known working area, and (d) overloading the wires with a greater amount of electric current than they were designed to carry. The injured party was a workman who was injured when a crane came within 3 or 4 feet of an electric wire which "arced" through cables which claimant was handling on the ground. The claimant was not an independent contractor, nor did he represent himself as qualified to perform the technical skills required to correctly install electrical equipment. There was also an intervening agent, the crane operator, who permitted the crane to come within arcing range of the power lines. A jury found the issues for the plaintiff and returned a verdict. The trial judge determined that plaintiff was contributorily negligent and entered judgment *n.o.v.* in favor of defendant. The reviewing court, after reviewing the evidence, determined that the plaintiff was not contributorily negligent as a matter of law and ordered the verdict reinstated. The case is cited as authority for the proposition that it is not common knowledge that electricity will arc and that, therefore, the manufacturers of such items as antennae are under a duty to warn those who install them of the danger of placing them in proximity to uninsulated electrical power lines. We do not so interpret that holding. (See *Witzig v. Illinois Power Co.,* 114 Ill.App.2d 139.) Even assuming that *Stilfield* is to be interpreted as plaintiff suggests, it would not be applicable to plaintiff's product liability counts, since he has held himself out as having more than common knowledge of the dangers of electricity by agreeing to install a citizens' band antenna and executing such agreement, as he alleges he did in Count VI of his complaint.

Whether or not the allegations in a complaint impose upon the manufacturer or seller a duty to warn is a question of law and not of fact.

(*Murphy v. Cory Pump and Supply Co.*, 47 Ill.App.2d 382, 197 N.E.2d 849; *Kay v. Ludwick*, 87 Ill.App.2d 114, 230 N.E.2d 494; *Fanning v. LeMay*, 38 Ill.2d 209, 230 N.E.2d 182.) Examples of cases holding no duty to warn include *Lance v. Senior*, 36 Ill.2d 516, 224 N.E.2d 231; *Kahn v. Chrysler Corp.* (S.D. Tex. 1963), 221 F.Supp. 677; *Weiss v. Rockwell Manufacturing Co.*, 9 Ill.App.3d 906, 293 N.E.2d 375; *Fanning v. LeMay, supra.*

The Restatement (Second) of Torts § 388 (1965) states that a chattel is dangerous if the supplier:

"(a) Knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and

(b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and

(c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous."

See also comment k to Restatement (Second) of Torts § 388 (1965).

■■ Applying these tests to both the tower and the antenna we do not find these items as dangerous chattels requiring the warning that the plaintiff contends necessary.

Therefore, *under the facts of this case* based upon the pleading, we find that as a matter of law the defendants in Count III, IV, and V were under no duty to warn the plaintiff.

Concerning the sixth count directed against Hubert Plumbing and Heating, the plaintiff asserts that the court erred in dismissing this count because it states a cause of action when it alleges that the possessor of the premises (Hubert) hired plaintiff to install a tower and antenna in dangerous proximity to the power lines and without warning that the lines were uninsulated, the possessor having actual or constructive knowledge of these conditions. In support of his contention the plaintiff basically contends that the plaintiff falls within the group of persons protected under the generally known "business invitee" doctrine. The Restatement of Torts, volume II, section 343(f) is cited in *Blue v. St. Clair Country Club*, 7 Ill.2d 359, 363, 131 N.E.2d 31, and correctly states the law at page 363:

" 'A possessor who holds *his* land open to others for his own business purposes, must possess and exercise a knowledge of the dangerous qualities of the *place itself* and the appliances provided therein, which is not required of his patrons.' " (Emphasis ours.)

The *Blue* case is not helpful in the present case because in that case an outdoor garden umbrella blew loose from its holder and injured a patron. The defendant had been warned about the propensity of the umbrella to

blow over in ordinary winds as this had been indicated to the management. The hazard also was on the premises. In the present case the hazard was not on the premises of the invitor; the wires were as visible to the plaintiff as to the invitor. The defective or dangerous condition was not hidden. The plaintiff was engaged as an electrical contractor to which certain knowledge may be imputed.

A business invitee also has responsibility for his own safety. As stated in *Beccue v. Rockford Park District,* 94 Ill.App.2d 179, 188-89, 236 N.E.2d 105, 109,

> "The limits of the duty owed by one inviting another on his premises is well-defined in Altepeter v. Virgil State Bank, 345 Ill.App. 585, 104 N.E.2d 334 (1952), at page 598:
>
> 'An owner of property is not an insurer against accident occurring on the premises of the owner, and an owner's liability to an invitee for injuries not intentionally inflicted must be predicated upon negligence, and no presumption of negligence on the part of the owner arises merely by showing that an injury has been sustained by one rightfully upon the premises. [Citation.] The rule is that an occupant or owner of premises owes to an invitee a duty to use ordinary care to have the premises in a reasonably safe condition for use in a manner consistent with the purpose of the invitation, not to lead such person into a dangerous trap and to give such person adequate and timely notice and warning of latent or concealed perils which are known to the owner but not to the invitee.' "

The court further stated that:

> "An invitee using the premises for his benefit and that of the owner, must be held to be equally aware of all the obvious and normal hazards which accompany the use being made of the premises. The owner's liability is bottomed on his superior knowledge, presumed or otherwise, of defects in the premises which another is invited to use." 94 Ill.App.2d 179, 189, 236 N.E.2d 105, 109.

The cases cited by the appellant do not dissuade us from our view. *Chicago & Illinois Midland Ry. Co. v. Pillsbury Mills, Inc.,* 47 Ill.App.2d 373, 198 N.E.2d 126, *reversed on other grounds,* 32 Ill.2d 600, 208 N.E.2d 573, involved a railroad tie left by the defendant on or near switch tracks owned by the defendant, creating a footing hazard and thereby, rendering the premises unsafe for the employees of the plaintiff.

The plaintiff also cites *Beccue v. Rockford Park District,* but this case does not aid his cause. Therein the court stated:

"Apart from the obvious dangers, the plaintiff, as an invitee, could assume that the premises were reasonably safe for the use to which the defendant had put them. * * *

* * *

'The rule is that an occupant or owner of premises owes to an invitee a duty to use ordinanry care to have the premises in a reasonably safe condition for use in a manner consistent with the purpose of the invitation, not to lead such person into a dangerous trap and to give such person adequate and timely notice and warning of latent or concealed perils which are known to the owner but not to the invitee.' " 94 Ill.App.2d 179, 188, 189, 236 N.E.2d 105, 109. (Emphasis ours.)

■■ The general rule has been often stated and stated in various ways but basically the landowner owes a duty of ordinary care to provide a safe place for the business invitee with respect to uses that are contemplated and to warn of dangers that are or should be known to the party in possession but which are not readily apparent to the invitee. See *Nowicki v. Union Starch & Refining Co.*, 54 Ill.2d 93, 296 N.E.2d 321 and cases cited therein.

See also *Giannone v. U.S. Steel Corp.* (3d Cir. 1956), 238 F.2d 544, wherein the court found no duty to warn on the part of a landowner who also owned and maintained the electrical wire, when a workman was electrocuted when fixing cables to a steel boom and electricity arced from a nearby power line.

■■ The plaintiff urges that the dangerous condition was not readily apparent. With this assertion we must disagree. The electrical wires were not concealed or hidden and it is common knowledge that power lines are dangerous.[1]

The judgment of the trial court is affirmed.

CREBS and CARTER, JJ., concur.

---

[1] See *Withey v. Illinois Power Company*, 32 Ill.App.2d 163, 172, 177 N.E.2d 254, "It has long been recognized that danger of electrical energy is a matter of common knowledge to all persons of ordinary intelligence and experience. Its use as a motive power has become so general and wide spread as to acquaint all competent persons with fact that any line carrying electricity is dangerous."