**Rodney ZEGER and Stacy Zeger, h/w, Plaintiffs,**

v.

**JOSEPH RHODES, LTD., Defendant.**

**No. 3:CV–91–916.**

United States District Court, M.D. Pennsylvania.

Aug. 27, 1992.

See also 775 F.Supp. 817.

---

not reiterate them here.

Carleton G. Goodnow, McVan & Eslinger, Glenside, Pa., for plaintiffs.

Peter Samson, Edward J. Cermanski, White and Williams, Philadelphia, Pa., for defendant.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

Plaintiffs initially filed this action in the Philadelphia Court of Common Pleas on January 4, 1991, seeking damages for injuries sustained by plaintiff Rodney Zeger while attempting to calibrate the back gauges of a sheet metal bending machine manufactured by defendant Joseph Rhodes, Ltd. ("Rhodes"). In their complaint, plaintiffs Rodney and Stacy Zeger assert causes of action based on negligence, strict liability, breach of warranty and loss of consortium. On May 10, 1991, Rhodes removed the action to the United States District Court for the Eastern District of Pennsylvania. Subsequently, on June 12, 1991, the action was transferred to this Court.

On May 15, 1992, Rhodes filed a motion for partial summary judgment on plaintiffs' strict liability and failure to warn claims. Rhodes maintains that the facts of this case do not warrant application of the principles of strict product liability and support a finding that the instructions provided to plaintiff were adequate. A hearing on Rhodes' motion was held on July 27, 1992.

### RELEVANT FACTS

Rhodes, which is primarily engaged in the business of manufacturing and selling specialized metal forming machinery, is a company organized and existing under the laws of England with its principal place of business and registered office located at Belle Vue, Wakefield, England. Rhodes is the proprietor of an invention named the Cuboid $D^3$ sheet metal bending machine. In February 1989, Teledyne initiated negotiations with Rhodes in the hope of securing an exclusive license to manufacture and distribute the Cuboid $D^3$ in North America.

Prior to negotiating the licensing agreement with Teledyne, Rhodes had declined to market its equipment in the United States because of the cost of insurance, the risk of liability under the United States' product liability laws, and its inability to

provide effective service to customers in the United States due to the great distance between the United States and England. To alleviate Rhodes' concerns, Teledyne agreed to indemnify Rhodes for claims brought under United States product liability laws.

The resulting agreement, entered into on May 20, 1988, granted Teledyne the exclusive license to manufacture, market and distribute the Rhodes' Cuboid $D^3$ throughout Canada, the United States and Mexico. As part of the agreement, Rhodes sold one Cuboid $D^3$ to Teledyne for use as a demonstrator and as a model to assist in the manufacturing process. The agreement provided for delivery of the machine to Teledyne Landis Machine Co. ("Teledyne Landis"), a Teledyne-related corporation located in Waynesboro, Pennsylvania. Although, at the direction of Teledyne, the machine was actually shipped to Chicago for a trade show, it was eventually shipped to Teledyne Landis in Waynesboro. Subsequently, a second machine was sold to Teledyne and shipped directly to Teledyne Landis in Pennsylvania.

Teledyne intended, with the assistance of Rhodes' employees, to "Americanize" and standardize the Cuboid $D^3$ so it could be produced in volume.[1] Teledyne also intended to revise and rewrite the Rhodes manual for the U.S. market. Rhodes trained Teledyne Landis employees Joel Peters and Keith Straub on the programming and operation of the Cuboid $D^3$. Additional training was made available to Teledyne Landis employees.

Although calibration procedures, including the procedure to calibrate back gauges, take place during the manufacturing of the Cuboid $D^3$ and are conducted prior to final assembly of the machine, Rhodes inadvertently included calibration procedures under the heading of "Routine Maintenance" in the manual it provided to Teledyne.[2]

In March 1989, plaintiff Ronald Zeger, an employee of Teledyne Landis, was injured while attempting to calibrate the back gauges of the Cuboid $D^3$ manufactured by Rhodes.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when there is no genuine issue of material fact to be resolved. Fed.R.Civ.P. 56. All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. The entire record must be examined in a light most favorable to the non-moving party. *Continental Insurance v. Bodie*, 682 F.2d 436, 438 (3d Cir.1982). If there is no genuine issue of material fact, summary judgment may be granted to the party entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

Since a motion for summary judgment is designed to go beyond the pleadings, factual specificity is required of a party who opposes such a motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). Accordingly, in order to defeat a properly supported motion for summary judgment, a plaintiff may not merely restate the allegations of his complaint. *Farmer v. Carlson*, 685 F.Supp. 1335, 1339 (M.D.Pa.1988). Nor can a plaintiff rely on self-serving conclusions, unsupported by specific facts in the record. *Celotex Corp. v. Catrett*, supra, 477 U.S. at 322–23, 106 S.Ct. at 2552–53, 91 L.Ed.2d at 273. A plaintiff must point to concrete evidence in the record which supports each essential element of his case. *Id.* If the plaintiff fails to provide such evidence, then he is not entitled to a trial and the defendant is entitled to summary

---

**1.** All Cuboids manufactured by Rhodes are custom made.

**2.** At the hearing on Rhodes' motion plaintiffs submitted a copy of the operating and manufacturing manual provided to Teledyne by Rhodes, Exhibit 4. The court notes that although the index of this copy indicates that the manual contains a section on calibration under the heading of "Routine Maintenance", for reasons unknown the manual itself does not contain the section on calibration. Notwithstanding this inconsistency, plaintiffs also submitted copies of what they claimed to be the calibration pages from the maintenance manual, Exhibit 5.

judgment as a matter of law. Fed.R.Civ.P. 56(e).

## DISCUSSION

### I. STRICT PRODUCT LIABILITY

Section 402A[3] of the Restatement (Second) of Torts provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Rhodes presents several arguments as to why the principles of strict product liability underlying § 402A do not apply to the instant action.

### A. Seller

■ First, Rhodes contends that it was neither a seller of the Cuboid D[3] in this market nor was it a seller with respect to the machine which is the subject of this action for the purposes of § 402A. Although Rhodes bases its argument on not being a seller *in this market,* that is the United States market, there is simply no support for the proposition that one must be a seller in a particular market to be subject to liability under 402A. Since Rhodes is engaged in the business of manufacturing and selling metal forming machines, including the Cuboid D[3], it is undoubtedly a seller, regardless of whether it primarily sells machines outside of the

United States. Therefore, this court need only determine whether the Cuboid D[3] which is the subject of this action was sold by Rhodes.

■ Although the two machines were provided to Teledyne for the purpose of executing the licensing agreement between Rhodes and Teledyne, the facts clearly indicate that the machines were sold by Rhodes to Teledyne. The fact that Rhodes may have charged Teledyne the domestic price rather than the higher export price is immaterial. Based on the foregoing, there is ample evidence to establish that Rhodes was a seller for the purpose of determining liability under 402A.

### B. User or Consumer

Rhodes also argues that the machine was not sold to a consumer and that at the time of the accident Rodney Zeger was not a user or consumer of the Cuboid D[3]. Rhodes contends that because the machines were sold to Teledyne as part of the licensing agreement, Teledyne is not a consumer. Whether or not Teledyne is a consumer is inapposite. Assuming Rhodes is a seller, the ensuing issue would be whether the plaintiff, Rodney Zeger, is either a user or consumer.

■ Rhodes argues that Zeger was neither a user nor a consumer as defined by § 402A at the time of the accident because he was participating in the fabrication of a product at the time of his injury. *See Scott v. Thunderbird Industries, Inc.,* 651 P.2d 1346 (Okla.Ct.App.1982) (injured employee participating in the fabrication of a product is not within the class of persons protected as user or consumers). However, in the instant case, Rodney Zeger was not injured while fabricating the Cuboid D[3]. On the contrary, the machine was complete at the time it left Rhodes' facility in England. In addition, plaintiffs have presented evidence indicating that Rodney Zeger was injured while calibrating the machine pursuant to

---

**3.** Pennsylvania product liability law governs this case. The principles of § 402A were first adopted by the Supreme Court of Pennsylvania

in *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966).

routine maintenance instructions contained in a manual provided by Rhodes.[4]

Moreover, the comments to § 402A contain an extremely broad definition of user. " 'User' includes those who are passively enjoying the benefit of a product, as in the case of passengers in automobiles or airplanes, as well as those who are utilizing it for the purpose of doing work upon it, as in the case of an employee of the ultimate buyer who is making repairs upon the automobile which he has purchased." Restatement (Second) of Torts § 402A cmt. 1. There is little doubt that a jury could determine that Rodney Zeger is included in the latter portion of this definition.

### C. Intended Use

■ Finally, Rhodes maintains that Zeger's injuries did not result from the intended use of the machine. However, the fact that the precise activity which Zeger was engaged in, calibrating the back gauges of the machine, was specified in the routine maintenance instructions contained in a manual provided by Rhodes, refutes this argument. Therefore, despite the peculiar circumstances of this case, Rodney Zeger may proceed to trial on the theory of strict product liability pronounced by § 402A of the Restatement (Second) of Torts.

### II. FAILURE TO WARN

Rhodes contends that various safety features described in a manual provided to Teledyne by Rhodes would have prevented the injury to Rodney Zeger. Plaintiffs maintain that these safety features should have been mentioned in the Routine Maintenance section of the manual, but were not. Moreover, Joel Peters, a Rhodes-trained Teledyne Landis employee, has indicated that he would have calibrated the back gauges in the same manner as Zeger. Viewing these facts in a light most favorable to the plaintiffs, this court cannot hold, as a matter of law, that Rhodes' warnings were adequate. Consequently,

Rhodes' motion for partial summary judgment will be denied.

---

**4.** The court notes that Rhodes has indicated that it inadvertently included calibration procedures under the heading of "Routine Maintenance" in the manual it provided to Teledyne. However, this has no effect on plaintiffs' argument that Rodney Zeger was using the machine in a manner consistent with the instructions provided by Rhodes.