BARTER and others, Respondents, v. GENERAL MOTORS CORPORATION and others, Appellants.

*No. 76 (1974). Argued October 1, 1975.—*
*Decided December 2, 1975.*
(Also reported in 235 N. W. 2d 523.)

For the appellants there were briefs by *Jenswold, Studt, Hanson, Clark & Kaufmann,* and oral argument by *John F. Jenswold,* all of Madison.

For the respondents there was a brief by *Boardman, Suhr, Curry & Field,* and oral argument by *Claude J. Covelli,* all of Madison.

HEFFERNAN, J. The question on this appeal is whether, in a products-liability action, where a defective motor home, manufactured in Minnesota and subsequently sold by a third party in Wisconsin, caused injury to the Wisconsin plaintiffs in Iowa, the liability insurer of the manufacturer, who in Minnesota issued a policy containing a no-action clause, can, under the Wisconsin

statutes, be sued and held liable in a direct-action suit brought in Wisconsin. We conclude that the Wisconsin statutes allow such suit and affirm the order of the circuit court denying the defendant's motion for summary judgment.

The plaintiffs are Wisconsin residents, who rented a Krager Kustom Koach in Madison, Wisconsin, and, while the plaintiffs were using this vehicle on a trip to Colorado, a wheel came off and the plaintiffs were severely injured. The injuries occurred in the state of Iowa.

The action was brought against the Zurich Insurance Company, the liability insurer for Krager Kustom Koach, and also against other defendants whose status is not pertinent to this appeal. Krager Kustom Koach was not sued.

The defendant and respondent in this appeal, Zurich Insurance Company, issued and delivered to Krager a comprehensive liability insurance policy. That policy was issued and delivered in the state of Minnesota and contained a no-action clause. The vehicle in question, a self-propelled motor home, was manufactured and assembled in Minnesota prior to May of 1971. The motor home was sold by Krager in Winona, Minnesota, to Allen Industries, Inc., a Minnesota corporation. The vehicle was taken by Allen from Winona, Minnesota, to Madison, Wisconsin, and was there sold on May 15, 1971, to James L. Dawson, a Wisconsin resident. About a month later, the motor home was rented to the plaintiff David R. Otis; and he and several others, co-plaintiffs in this action, were injured on July 24, 1971, while traveling through Iowa.

The plaintiffs' action is one for products liability, as heretofore approved by this court in *Dippel v. Sciano* (1967), 37 Wis. 2d 443, 155 N. W. 2d 55. They alleged the facts set forth above and that Zurich Insurance Company was the insurer of Krager Kustom Koach.

In respect to Krager Kustom Koach, which is not a party to the action, plaintiffs alleged that Krager was in the business of manufacturing and assembling motor-home vehicles and that Krager expected its product to enter the stream of commerce and to reach the general public without change.

The plaintiffs also alleged that the vehicle reached the ultimate consumer without change and that the vehicle was unreasonably dangerous due to defective design, particularized in the complaint.

The defendant Zurich Insurance Company moved for summary judgment dismissing it as a defendant on the ground that the policy it issued to Krager provided that "no action" should lie against it until the obligation of the insured had been finally determined by judgment or written agreement.

The trial judge held the no-action clause of the policy inapplicable in the Wisconsin action and entered an order denying the defendant's motion for summary judgment. It is from that order that the appeal has been taken.

The remedy of summary judgment is provided by sec. 270.635, Stats. Under sec. 270.635, summary judgment cannot be granted if the affidavits of the parties reveal a factual dispute that can only be resolved at trial. In the event the facts are not disputed, the trial judge may deny or grant a summary judgment upon the basis of the legal question involved. Such is the case here. The facts are not disputed.

The only question presented is whether, under the Wisconsin statutes and the undisputed facts, a direct action can be brought against the insurer. Two statutes govern the disposition of this legal question:

"204.30 (4) [1967] Any bond or policy of insurance covering liability to others by reason of the operation of a motor vehicle shall be deemed and construed to contain the following conditions: That the insurer shall be liable to the persons entitled to recover for the death

of any person, or for injury to person or property, irrespective of whether such liability be in praesenti or contingent and to become fixed or certain by final judgment against the insured, when caused by the *negligent operation, management, control, maintenance, use or defective construction of the vehicle* described therein, such liability not to exceed the amount named in said bond or policy." (Emphasis added.) [1]

"260.11 (1) [1969] . . . *In any action for damages caused by negligence,* any insurer which has an interest in the outcome of such controversy adverse to the plaintiff or any of the parties to such controversy, or which by its policy of insurance assumes or reserves the right to control the prosecution, defense or settlement of the claim or action of the plaintiff or any of the parties to such claim or action, or which by its policy agrees to prosecute or defend the action brought by the plaintiff or any of the parties to such action, or agrees to engage counsel to prosecute or defend said action, or agrees to pay the costs of such litigation, *is by this section made a proper party defendant in any action brought by plaintiff in this state* on account of any claim against the insured. *If the policy of insurance was issued or delivered outside the state of Wisconsin, the insurer is by this section made a proper party defendant only if the accident, injury or negligence occurred in the state of Wisconsin.*" (Emphasis added.)

The history of these two statutes is recapitulated in *Frye v. Angst* (1965), 28 Wis. 2d 575, 579, 137 N. W. 2d 430. *Frye v. Angst* pointed out that sec. 204.30 (4), Stats., provides for direct liability of the insurer to the injured party, while sec. 260.11 (1) is a procedural

---

[1] In 1971, sec. 204.30 (4), Stats., was amended, making it applicable to the same risks to which sec. 260.11 (1) applied by supplanting the words, "negligent operation, management, control, maintenance, use or defective construction of the vehicle," with the single word, "negligence." This court has held that the amendment is not to be applied retroactively. *Shipman v. Kenosha Unified School Dist. No. 1* (1973), 57 Wis. 2d 697, 205 N. W. 2d 399. As defendant's insurance policy was written prior to the amendment (*i.e.,* August, 1970), the provision quoted in the text of this opinion is the applicable statute.

statute to allow direct action by the injured party. *Frye* holds that these statutes must be considered together. It should be noted, however, that *Frye* does not control the disposition of this case, inasmuch as the provisions of both statutes were amended by the legislature prior to the circumstances herein. From the teaching of *Frye,* however, we conclude that, to commence and maintain the action against the defendant Zurich, the plaintiffs' action must satisfy the requirements of both secs. 204.30 (4) and 260.11 (1).

The action brought by the plaintiffs is founded upon sec. 402 A, Restatement, 2 *Torts* 2d, as modified and adopted by this court in *Dippel v. Sciano* (1967), 37 Wis. 2d 443, 155 N. W. 2d 55. *Dippel,* itself, points out that, although this court has adopted the broad principles of the Restatement, the liability which may be found under that rationale is predicated upon the theory that placing in the stream of commerce a product in a defective condition, unreasonably dangerous, constitutes a form of negligence per se. We have repeatedly stated that the liability which may be pinned upon a defendant under the *Dippel* rationale is, conceptually at least, negligence and that a plaintiff is subject to the diminution of his damages in the event that it is found that he contributed to the injuries. As we stated in *Howes v. Hansen* (1972), 56 Wis. 2d 247, 253, 201 N. W. 2d 825, quoting the language of Mr. Justice HALLOWS in the concurring opinion to *Dippel:*

" 'What we mean is that a seller who meets the conditions of sec. 402 A, Restatement, 2 *Torts* 2d, in Wisconsin is guilty of negligence as a matter of law and such negligence is subject to the ordinary rules of causation and the defense applicable to negligence.' "

It is, therefore, apparent that the trial judge correctly concluded that the cause of action for strict liability falls within the ambit of the language of sec. 260.11 (1),

Stats., as a lawsuit for negligence. Sec. 260.11 (1) applies, however, "only if the accident, injury or negligence occurred in the state of Wisconsin." Neither the accident nor the injury occurred in this state. The question, then, is whether the negligence insured against occurred in this state.

The defendant argues that there can be no negligence insofar as Krager is concerned, because Krager had nothing to do with the product and made no sales subsequent to the sale to Allen in Minnesota. While, factually, that position is correct, it is irrelevant in respect to the liability of Krager.

Under sec. 402 A, pages 347, 348, Restatement, 2 *Torts* 2d:

"One who sells any product in a defective condition unreasonably dangerous to the user or consumer . . . is subject to liability for physical harm thereby caused to the ultimate user or consumer . . . ."

Under the philosophy of *Dippel,* the liability is predicated, not upon the acts of the defendant, but upon the fact that ultimately an unchanged, dangerous, and defective product reached the hands of the consumer. While the factor of sale is important in establishing the underlying predicate that the seller, by marketing his product, undertook and assumed the special responsibility toward the consuming public, the sale is relevant only to the extent that it is probative of the "business" of the manufacturer or seller. It is the "business of selling" that is significant. Comment *f,* sec. 402 A, p. 350, Restatement, 2 *Torts* 2d. Comment *l* of the Restatement, 2 *Torts* 2d, sec. 402 A, p. 354, provides in part:

"In order for the rule stated in this Section to apply, it is not necessary that the ultimate user or consumer have acquired the product directly from the seller, although the rule applies equally if he does so. He may have acquired it through one or more intermediate deal-

ers. It is not even necessary that the consumer have purchased the product at all. . . . The liability stated is one in tort, and does not require any contractual relation, or privity of contract, between the plaintiff and the defendant."

Under sec. 402 A and *Dippel,* liability also falls upon any subsequent seller in the chain of dealings; and the liability is not based upon lack of ordinary care in the manufacture of a product, but is based rather upon the breach of duty which occurs upon placing in the hands of a consumer a defective product. While there may well have been a breach of duty by Allen when it sold the allegedly defective product, this does not absolve Krager from liability for originally placing the defective product in the stream of commerce, which reached the consumer at the time of the sale in Wisconsin. The original seller has a duty to market a reasonably safe product, and this duty is breached each time the defective or dangerous product is sold. Dean Prosser stated:

"The maker, by placing the goods upon the market, represents to the public that they are suitable and safe for use . . . . He intends and expects that the product will be purchased and used in reliance upon this assurance of safety . . . . The middleman is no more than a conduit, a mere mechanical device, through whom the thing sold is to reach the ultimate user. The supplier has invited and solicited the use; and when it leads to disaster, he should not be permitted to avoid the responsibility by saying that he has made no contract with the consumer." Prosser, *Torts* (4th ed.), p. 651, sec. 97.

That a separate breach of duty or a separate act of negligence occurs with each successive sale is also supported by language in *Dippel, supra.* In *Dippel,* the court noted:

"The abrogation of the privity requirement is not strictly and exclusively a matter of sales and contract

law. When the manufacturer or the seller offers a product for sale which he expects to be used by the consuming public within its intended use and such product is defective and injures the consumer, his liability in tort can be based upon a breach of duty quite apart from contract obligations." *Dippel*, at 458. *See also: Howes v. Hansen* (1972), 56 Wis. 2d 247, 257, 201 N. W. 2d 825.

This court confronted a somewhat similar situation in *Schnabl v. Ford Motor Co.* (1972), 54 Wis. 2d 345, 195 N. W. 2d 602, 198 N. W. 2d 161. In that case an accident occurred in Indiana as the result of defective seat belts that were manufactured and installed in Minnesota in a vehicle which was first sold to a dealer in Minnesota, who in turn sold the automobile in Wisconsin to the plaintiff. We held that such state of facts was sufficient to spell out a negligent act in Wisconsin even though the operational negligence in manufacture or installation had occurred elsewhere.

In *Schnabl,* the court held that the delivery or sale of a defective vehicle (in respect to the seat belts) in Wisconsin by an intermediary constituted an act of negligence that occurred in Wisconsin. In this case, then, under the rationale of *Dippel,* a sale occurred in Wisconsin of a defective product for which Zurich's insured may be held directly liable, because, under sec. 402 A, the defective product was placed in the stream of commerce by the insured—even though there was no privity of contract between the plaintiff and the insured and even though the harm caused by the sale of the defective product in Wisconsin occurred in Iowa. The requirement of sec. 260.11 (1), Stats., that the "negligence occurred in the state of Wisconsin" is satisfied in this case. The conduct of Krager Kustom Koach placing in the stream of commerce a defective and dangerous product that reached a consumer in Wisconsin was negligence—negligence that occurred in Wisconsin.

It is also clear that the provisions of sec. 204.30 (4), Stats., were satisfied. That section of the statute re-

quires that in order for there to be direct liability, the cause of the accident must be "negligent operation, management, control, maintenance, use *or* defective construction of the vehicle . . . ." (Emphasis added.)

While this case does not reach the process of proof, the allegations are sufficient to comply with sec. 204.30 (4), Stats. It is alleged "that said vehicle was unreasonably dangerous to its users and their property due to the fact that it was defective . . . ."

It is also alleged that such defective vehicle reached the plaintiffs without substantial change after it left the hands of Krager Kustom Koach, the defendant's insured. While it may be, as the defendant appears to argue, that plaintiffs also allege actual negligence in the design and assembly of the vehicle, which clearly occurred in Minnesota, the significant allegation under the *Dippel* rationale is that the cause of the accident was the defective condition or construction of the vehicle at the time it reached the plaintiffs.

The act of negligence which triggers the operation of both secs. 204.30 (4) and 260.11 (1), Stats., is the defective condition of the vehicle. That defective condition, which is negligence per se under the Wisconsin rationale of strict liability, satisfies both statutes.

The allegations of the plaintiff's cause of action are sufficient, if proved, to permit a direct action against Zurich Insurance Company and also impose liability upon that company.

*By the Court.*—Order affirmed.