**Sterling F. SCOTT, Jr., Appellant,**

v.

**THUNDERBIRD INDUSTRIES, INC., Appellee.**

No. 56261.

Court of Appeals of Oklahoma, Division No. 2.

June 22, 1982.

Rehearing Denied Aug. 19, 1982.

Certiorari Denied Oct. 13, 1982.

Released for Publication by Order of the Court of Appeals Oct. 15, 1982.

James M. Hays, III, John W. Norman, Oklahoma City, for appellant.

Page Dobson, Michael W. Hinkle, Holloway, Dobson, Hudson & Bachman, Oklahoma City, for appellee.

BOYDSTON, Presiding Judge.

Plaintiff Employee, Sterling F. Scott, Jr., appeals from denial of motion for new trial sustaining trial court's summary judgment in favor of defendant Thunderbird Industries, Inc. Employee was injured when the coating inside a tank he was welding exploded. He pursued his compensation remedy and then sued Thunderbird Industries, Inc., steam cleaning equipment manufacturer, and its subassembler-manufacturer, Metalfab Industries, Inc., trailer and tank manufacturer, on theories of manufacturers' products liability and negligence.

The facts are relatively undisputed. Trial court sustained summary judgment in favor of Thunderbird based on the depositions filed in the case and denied Employee's motion for new trial. The record is silent regarding the judicial fate of Metalfab. We affirm judgment of trial court.

Thunderbird Industries manufactured industrial steam cleaning equipment. It received a special order for a trailer-mounted cleaning unit equipped with a tank, which type of equipment it does not manufacture. Thunderbird contacted Metalfab to build a tank trailer on which its cleaning unit could be installed.

Metalfab subcontracted the assembly of the trailer to Cimarron Manufacturing Co., a nonparty. Employee was a welder for Cimarron.

Metalfab designed the trailer and submitted the design to Thunderbird who approved it. The only design specification made by Thunderbird was that the trailer be painted white. The design specified a fluid catch tank be coated with rust inhibitor after its installation and before delivery. The rust inhibitor applied by Cimarron was,

as most are, explosive. No written warning on the tank during the assembly process indicated the tank interior was coated with an explosive substance.

After Cimarron finished the assembly, its inspectors noticed several bracket placements on the tank needed repositioning to conform to the plans. Employee was injured by the exploding tank when he lit his torch to begin welding the brackets. It is not disputed that the rust inhibitor exploded or that heat from the welding torch ignited it.

I

This appeal raises two issues: (1) whether Thunderbird is insulated from third party liability claims by virtue of the Workers' Compensation Act, 85 O.S.1981 § 44; and (2) whether Thunderbird is liable for manufacturers' products liability or negligence by reason of defective design, *i.e.*, failure to warn of the explosive nature of the rust inhibitor. We need only discuss the latter issue because it is dispositive.

Employee's petition alleges the explosion was caused by defects of "design, material, content and workmanship of the metal tank portion of the trailer, for which Defendants are strictly liable in tort." Next he pleads a cause of action alleging faulty design and manufacture, failure to warn, and failure to furnish safety devices to prevent the explosion.

■ Basically, Employee pleads the same facts under two theories—manufacturers' products liability and negligence. The issue may be stated in this way: is a commercial purchaser of a component part liable in tort to the manufacturer's employee for defective design of the component part that injures employee during the manufacturing process? We find no such liability.

■ Manufacturers' products liability does not apply to these facts. To maintain a cause of action under manufacturers' products liability, the plaintiff must prove that the product was the cause of the injury, that a defect in design or otherwise existed in the product *at the time it left the* *control of the manufacturer,* and that the defect made the product unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary *consumer* who purchases it. *Stuckey v. Young Exploration Co.,* Okl., 586 P.2d 726 (1978).

■ An injured employee participating in the fabrication of a product is not within that class of persons who are under the umbrella of protection afforded by the theory. Employee was not a user or a consumer. Before liability may attach, a product must reach a *user* or *consumer* without substantial change in the condition in which it is sold. *Stuckey v. Young Exploration Co.,* 586 P.2d at 731, citing Restatement (Second) of Torts § 402A (1965); *Kirkland v. General Motors Corp.,* Okl., 521 P.2d 1353 (1974).

■ Thunderbird is not within the theory because it is not a manufacturer who has marketed and thus injected a defective product into the "stream of commerce." *Dewberry v. LaFollette,* Okl., 598 P.2d 241 (1979). The theory contemplates the defective product shall have left the control of the marketer or manufacturer and shall have been passed on to a consumer or user as an end product which is fit and safe for its intended use. *See Thompson v. Trane Co.,* Okl., 500 P.2d 1329 (1972). It does not contemplate protection of an employee who is actively engaged in its manufacture or fabrication.

■ Until the product is completely manufactured and marketed, the responsibility for its function remains in the hands of the party who has control of it. The tank exploded before entering "the stream of commerce" while in the hands of Cimarron. It had never been delivered to Thunderbird. Thunderbird did not have control of the tank trailer. It was not involved in the manufacturing, processing, or assembling process at the time of the injury. *Kirkland v. General Motors Corp.,* 521 P.2d at 1361 (defining the term "manufacturer" as a processor or assembler). The trailer was never in its possession. Thunderbird did not design the trailer and, in fact, did no

more than exercise its rights as a commercial purchaser and approve the design submitted by Metalfab. Thunderbird's products—steam cleaning equipment—did not explode. It was Metalfab's and Cimarron's product—the tank trailer—that exploded.

We distinguish situations in which the defective product is a tool or pre-assembled component part supplied by others as subassemblers that is being used by an employee in the process of fabrication when it causes injury. Clearly, such products are, in fact, already in the stream of commerce and present entirely different circumstances.

## II

The only part of Employee's argument that tantalizes our judicial interest is that of defective design and the duty to warn of the explosive characteristics of the tank. However, this argument fails for several reasons.

■ First, Thunderbird owes no more legal duty to injured Employee than one who contracts to have his house built owes any legal duty to his independent contractor's employees. There is no duty to warn of dangers inherent in the task or which are created by the oversight or negligence of fellow employees or the contractor. *See Welch v. Heat Research Corp.*, 644 F.2d 487 (5th Cir. 1981); *Marshall v. H. K. Ferguson Co.*, 623 F.2d 882 (4th Cir. 1980).

Second, no proof of the necessary causal connection exists between the injury and any act or omission of Thunderbird. *See Green v. Sellers*, Okl., 413 P.2d 522 (1966). There is, however, abundant proof that the tank was nothing more than a simple tank designed like most other tanks. It is common knowledge that, like most other tanks, it is only dangerous when filled with a dangerous substance. There is no proof that it is an inherently dangerous design any more than an automobile gasoline tank is inherently dangerous.

Thunderbird did not control the order, method or procedure of fabrication. It merely approved the plans furnished by Metalfab. Thunderbird never touched the product.

■ Cimarron installed the rust inhibitor itself, as part of routine procedure, according to plans furnished by Metalfab. The product never left the control of Cimarron. The explosion occurred while Cimarron was attempting to correct its own fabrication defect. Cimarron and presumably all its employees who worked on the project had knowledge of the design, manufacture and condition of the tank. There is generally no duty to give warning to members of a profession against dangers generally known to members of that profession. *Mayberry v. Akron Rubber Machinery Corp.*, 483 F.Supp. 407 (N.D.Okl.1979). Cimarron installed the explosive material and was responsible for its defects. The explosion resulted from the procedures followed by Cimarron and its employees in attempting to correct the bracket problem. No facts in this record suggest otherwise. We find no controverted material facts, no legal duty owed to Employee, no duty breached by Thunderbird, nor any causal relationship between the acts of Thunderbird and the explosion.

## III

■ Where summary judgment has been granted, the appellate court is required to examine the pleadings and evidentiary materials. Unless the record discloses controverted material facts or if the uncontroverted facts fail to support legitimate inferences favoring the well-pled theory of the party against whom the judgment is granted, the judgment will not be disturbed. Dist. Ct.Rule 13, 12 O.S.1981, Ch. 2 App. *See Weaver v. Pryor Jeffersonian*, Okl., 569 P.2d 967 (1977); *Northrip v. Montgomery Ward & Co.*, Okl., 529 P.2d 489 (1974); *Runyon v. Reid*, Okl., 510 P.2d 943 (1973).

We find no abuse of discretion; consequently, we affirm the trial court's summary judgment and subsequent denial of motion for new trial.

BACON, J., concurs.

BRIGHTMIRE, J., concurs in result.